Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties through a Pre-trial Agreement dated November 7, 1994 and approved by the Deputy Commissioner December 5, 1996, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The named employer is self-insured.
4. The employee's average weekly wage will be determined from the Form 22 Wage Chart to be submitted by defendants at the time of the hearing.
5. The employee sustained an injury (or started missing time from work because of disease) on or about August 18, 1995, with the exact date to be determined by the Industrial Commission.
6. The plaintiff's injury/disease arose out of and in the course of employment and is compensable.
7. Medical records attached to letter from Ms. King, Defendant's Counsel, dated May 9, 1997, to Deputy Commissioner William L. Haigh.
8. The issues to be determined are:
a. For plaintiff:
 I. Is plaintiff's fibromyalgia related to plaintiff's injury sustained on or about August 18, 1995?
 II. Is plaintiff due workers' compensation benefits as of June 1, 1996 until the present?
b. For defendants:
 Is plaintiff entitled to workers' compensation benefits for disability resulting from fibromyalgia when such condition has not been related to the plaintiff's work or to the plaintiff's admitted work-related-injury?
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is 35 years old and has a 10th grade education, started working part-time for defendant in August 1978; and, since April, 1979, plaintiff has worked full time for defendant. Sometime in 1991, plaintiff became a towmotor operator and a pallet handler which involved heavy lifting.
2. Because of new OSHA rules, defendant began in September, 1994, requiring plaintiff and its other towmotor operators to drive backwards; whereas, previously the operators had driven forward and backwards. This change required plaintiff to turn his head to his right and look over his right shoulder in order to see where he was driving the towmotor and to determine if anyone or anything was in his path. On occasions beginning in about December 1994, plaintiff told Ronald McNeill, defendant's safety manager, that he experienced stiffness in his neck, shoulders, and low back areas and that operating the towmotor looking backwards for extended periods of time seemed to aggravate these problems. In addition, in about June, 1995, defendant started requiring its towmotor operators to wear seat belts which made it even more difficult for operators to turn their heads and look backwards over their shoulders. In June or July, 1995, plaintiff complained of stiffness in his neck and headaches being brought on by the constant turning of his head to the right.
3. Plaintiff had previously been treated for back, neck and shoulder problems. On June 8, 1992 plaintiff was seen by a physician for complaints of frequent low back pain and upper right quadrant pain for four weeks, and stiffness in his neck. He was placed on medication for treatment of a urinary tract infection which was causing his low back pain and he was placed on heat to his shoulders with liniments for treatment of fibromyositis of his shoulder. When seen in follow-up one week later, plaintiff reported feeling better and it was noted that his urinary tract infection was clearing. There was no recordation about his neck or shoulders. On one occasion in February, 1994, plaintiff was treated for a workers' compensation injury involving strain/sprain of his mid back.
4. On August 18, 1995 while driving a towmotor, plaintiff quickly turned his head over his right shoulder while the recoil type seat belt caught and prevented him from twisting his hips as he turned his head, whereupon he felt a pop and the onset of sharp pain in his upper back area, which pain he had never before experienced. Prior to August 18, 1995 plaintiff was able to satisfactorily perform his regular job duties on a regular basis despite occasional stiffness in his neck, shoulders and low back.
5. By filing an I.C. Form 60, defendant admitted plaintiff's right to compensation for the August 18, 1995 injury by accident and defendant thereafter paid workers' compensation benefits to plaintiff for various periods of temporary total and temporary partial disability until he returned to work at his pre-injury average weekly wage on December 6, 1995. The I.C. Form 60 reflects that defendant calculated plaintiff's average weekly wage to be $458.78 and his compensation rate to be $307.87. The I.C. Form 22 Wage Chart submitted by defense counsel May 20, 1997, reflects that plaintiff's average weekly wage was $486.48 and his compensation rate is $324.32.
6. Plaintiff was examined and evaluated by Dr. Robert F. Glenn on August 18, 1995 with complaints of having twisted and hurt his upper back and neck, feeling a pop, and "now can't hardly move." Dr. Glenn prescribed medicines and bed rest for two days for treatment of thoracic/cervical strain. Plaintiff thereafter was treated by Dr. Stanley Peters and by Dr. Carlos de la Garza who treated plaintiff for chronic pain syndrome and fibromyalgia. In early December, 1995, plaintiff was released to return to work with the restriction that he not operate a towmotor more than one hour per day.
7. On December 6, 1995 plaintiff returned to work for defendant and thereafter worked through May 30, 1996. During that period of time, plaintiff performed various jobs including painting racks, maintaining books and records, and breaking down and rebuilding pallets, the last of which jobs required him to lift an average weight of 45 pounds. Plaintiff was assigned these various jobs because of on-going complaints of stiffness and pain in his low back, shoulders and neck.
8. During the period from December 6, 1995 through May 30, 1996, plaintiff continued to experience stiffness and pain in his neck, shoulders and low back; and on April 10, 1996 plaintiff came under the care of Dr. Dayton Dennis Payne, Jr., a rheumatologist, for complaints of neck pain and occasional radiation of pain to both shoulders and upper extremities. Dr. Payne has expertise concerning fibromyalgia. Dr. Payne diagnosed plaintiff as suffering from fibromyalgia, a chronic musculoskeletal pain syndrome, and prescribed medications and exercise. By June, 1996, plaintiff's condition had worsened and involved prominent muscular pain which was most severe about the shoulders and neck and which was spreading to other muscular areas, including the lower extremities. By January, 1997, plaintiff's pain and stiffness involved multiple body areas, including all four extremities, neck, chest, and his lower back. Plaintiff remains under the care of Dr. Payne for treatment of his fibromyalgia which has been very refractory to treatment.
9. Dr. Payne was of the opinion that plaintiff's injury by accident at work on August 18, 1995 could have, or might have either caused or aggravated plaintiff's fibromyalgia which he diagnosed. He also opined that plaintiff's repetitive activity of turning his head to the right while operating the towmotor at work over an extended period of time also might have caused or aggravated plaintiff's fibromyalgia.
10. The Full Commission finds that plaintiff's admittedly compensable injury by accident of August 18, 1995 caused or significantly aggravated his fibromyalgia to an extent that plaintiff has been rendered unable to earn any wages in any employment since May 30, 1996. Therefore, plaintiff's fibromyalgia, or the aggravation of plaintiff's fibromyalgia, flowed directly from and was a direct consequence of his admittedly compensable injury by accident.
11. As of January 22, 1997, Dr. Payne had not released plaintiff to return to work.
12. Pursuant to defendant's wholly-funded disability program, plaintiff was paid short-term disability benefits on June 21, 1996 in the amount of $193.71 and in the amount of $226.00 per week thereafter to September 13, 1996. Plaintiff was paid long-term disability benefits in the amount of $301.00 weekly from September 20, 1996 to January 1, 1997.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. By I.C. Form 60 defendant admitted plaintiff's right to compensation for the injury by accident of August 18, 1995. While that Form and defendant's subsequent payment of workers' compensation benefits constitute an Award of the Commission with respect to compensability and liability for the injury by accident, it did not conclusively establish plaintiff's average weekly wage and corresponding compensation rate as is recognized by the parties' in their Pre-Trial Agreement dated November 7, 1996. N.C. Gen. Stat. § 97-18(d) and N.C. Gen. Stat. §97-82. Pursuant to the Order filed by the Deputy Commissioner on May 14, 1997, defendant had twenty days to submit a Form 22 Wage Chart. The I.C. Form 22 Wage Chart submitted by defense counsel May 20, 1997, reflects that plaintiff's average weekly wage was $486.48 and his compensation rate is $324.32.
2. As a result of the injury by accident of August 18, 1995 plaintiff has been totally disabled since May 30, 1996 by reason of fibromyalgia for which he is entitled to compensation at the rate of $324.32 per week beginning May 31, 1996 and continuing thereafter until further Order of the Commission. Said compensation payments are subject to a credit to which defendant is entitled in the amount of $193.71 for the week of June 21, 1996, in the amount of $226.00 weekly thereafter to September 13, 1996, and in the amount of $301.00 weekly from September 20, 1996 through January 1, 1997 and thereafter to the extent that said long term disability benefits are continued by the defendant. N.C. Gen. Stat. § 97-2(9); N.C. Gen. Stat. § 97-29; and N.C. Gen. Stat. § 97-42.
3. Defendant shall be responsible for medical compensation for treatment of plaintiff's fibromyalgia. N.C. Gen. Stat. §97-2(19) and N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee hereinafter approved, defendant shall pay compensation to plaintiff at the rate of $324.32 per week beginning May 31, 1996 and continuing thereafter until further Order of the Commission, less a credit to which defendant is entitled in the amount of $193.71 for the week of June 21, 1996, and in the amount of $226.00 weekly thereafter to September 13, 1996, and in the amount of $301.00 weekly from September 20, 1996 through January 1, 1997 and continuing thereafter to the extent that defendant continues to pay long-term disability benefits. As much of said compensation as has accrued shall be paid in a lump sum without commutation.
2. A reasonable attorney's fee in the amount of twenty-five percent of the benefits awarded herein is hereby awarded for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation benefits otherwise payable to plaintiff and shall be paid directly to his attorney.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury by accident and fibromyalgia when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
4. Defendant shall bear the costs of this proceeding, and shall further pay Dr. Scott D. Hoffman an expert witness fee of $155.00 (family practice), and Dr. Dayton Dennis Payne, Jr., an expert witness fee of $180.00 (rheumatologist).
 S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _____________ LAURA K. MAVRETIC COMMISSIONER